1
2
3
4
5
6
7
8        **UNITED STATES DISTRICT COURT**

9        **EASTERN DISTRICT OF CALIFORNIA**

10

11   ANNETTE MARIE ALDERETE,                    ) Case No.: 1:12-cv-01307 - JLT
                                                 )
12            Plaintiff,                         ) ORDER REMANDING THE ACTION PURSUANT
                                                 ) TO SENTENCE FOUR OF 42 U.S.C. § 405(g)
13        v.                                     )
                                                 ) ORDER DIRECTING ENTRY OF JUDGMENT IN
14   CAROLYN W. COLVIN,                          ) FAVOR OF PLAINTIFF ANNETTE ALDERETE AND
     Acting Commissioner of Social Security,     ) AGAINST DEFENDANT CAROLYN COLVIN,
15                                               ) ACTING COMMISSIONER OF SOCIAL SECURITY
                                                 )
16            Defendant.                         )
                                                 )
17   _____   )

18          Annette Marie Alderete ("Plaintiff") asserts she is entitled to supplemental security income

19   under Title XVI of the Social Security Act.  Plaintiff asserts the administrative law judge ("ALJ") erred

20   in assessing the opinion of an examining physician, and seeks judicial review of the decision.  For the

21   reasons set forth below, the action is **REMANDED** for further proceedings.

22                                    **PROCEDURAL HISTORY**

23          Plaintiff filed an application for supplemental security income on March 23, 2009, alleging

24   disability beginning January 3, 2005.  (Doc. 12-6 at 2).  The Social Security Administration denied her

25   claim initially and upon reconsideration.  (Doc. 12-5 at 4-7).  After requesting a hearing, Plaintiff

26   testified before an administrative law judge ("ALJ") on January 5, 2011.  (Doc. 12-3 at 39).  The ALJ

27   determined Plaintiff was not disabled under the Social Security Act, and issued an order denying

28   benefits on September 22, 2011.  *Id.* at 19-32.  Plaintiff requested review by the Appeals Council of

1  Social Security, which denied the request on June 20, 2012. *Id.* at 2-5.  Thus, the ALJ's determination

2  became the decision of the Commissioner of Social Security ("Commissioner").

3  **STANDARD OF REVIEW**

4  District courts have a limited scope of judicial review for disability claims after a decision by

5  the Commissioner to deny benefits under the Social Security Act.  When reviewing findings of fact,

6  such as whether a claimant was disabled, the Court must determine whether the Commissioner's

7  decision is supported by substantial evidence or is based on legal error.  42 U.S.C. § 405(g).  The

8  ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal

9  standards were applied and the findings are supported by substantial evidence.  *See Sanchez v. Sec'y of*

10  *Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

11  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a

12  reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S.

13  389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)).  The record as a whole

14  must be considered, because "[t]he court must consider both evidence that supports and evidence that

15  detracts from the ALJ's conclusion."  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

16  **DISABILITY BENEFITS**

17  To qualify for benefits under the Social Security Act, Plaintiff must establish she is unable to

18  engage in substantial gainful activity due to a medically determinable physical or mental impairment

19  that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C.

20  § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if:

21
22
23
24

> physical or mental impairment or impairments are of such severity that he is not only
> unable to do his previous work, but cannot, considering his age, education, and work
> experience, engage in any other kind of substantial gainful work which exists in the
> national economy, regardless of whether such work exists in the immediate area in
> which he lives, or whether a specific job vacancy exists for him, or whether he would
> be hired if he applied for work.

25  42 U.S.C. § 1382c(a)(3)(B).  The burden of proof is on a claimant to establish disability.  *Terry v.*

26  *Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).  Once a claimant establishes a prima facie case of

27  disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other

28  substantial gainful employment.  *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

**DETERMINATION OF DISABILITY**

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920 (a)-(f). The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* The ALJ must consider objective medical evidence and opinion (hearing) testimony. 20 C.F.R. §§ 416.927, 416.929.

**A.    Relevant Medical Opinions**

Dr. Philip Cushman performed a psychological evaluation on June 10, 2009. (Doc. 12-8 at 28-35). Plaintiff reported she was always depressed, could not get along with others, and she had a bi-polar disorder. *Id.* at 28. Dr. Cushman observed: "[Plaintiff] spoke with a lower toned, gravelly, female voice and tended to express herself in short sentences and phrases, giving the impression of low-average to slightly less than average intellect as well as a significant amount of guardedness. Her affect appeared mild to moderately anxious and mild to moderately guarded." *Id.* Also, Dr. Cushman noted Plaintiff "denie[d] a history of hearing voices, but ha[d] a significant history of paranoia and aggression to self and others." *Id.* at 29. Plaintiff reported she had used methamphetamine, cocaine, heroin, and PCP. *Id.* at 30-31.

Dr. Cushman administered the Trials A and B, Bender Gestalt 2, Wechsler Adult Intelligence Scale-III, and Wechsler Memory Scale Revised. (Doc. 12-8 at 32). He found Plaintiffs' full scale IQ of 59, visual IQ of 61, and performance IQ of 64 showed she was "intellectually functioning in the mild mentally deficient range." *Id.* at 32-33. Because Plaintiff was able to "listen to and accurately recall up to four digits forwards and inconsistently three backwards," Dr. Cushman believed this "suggest[ed] significant problems with attention, concentration and/or effort." *Id.* at 33. Dr. Cushman opined the results on Trials A and B "suggest[ed] that [Plaintiff's] thinking speed is slow, and on more complex tasks she will appear slow and error prone." *Id.* Dr. Cushman noted, "Her performance was so poor on Trials B that it is actually suggestive of someone trying to do poorly in hopes of the examiner stopping

the task." *Id.* In addition, Dr. Cushman administered "The Test of Memory Malingering," which indicated Plaintiff "was putting as much or more effort into appearing more impaired than she actually [was]" and the "overall test results [were] a significant underestimate of her cognitive abilities." *Id.* at 33-34. He concluded Plaintiff could perform "some simple and repetitive tasks in a work setting" but would "have difficulties . . . with regular attendance and consistent participation, as she ha[d] little experience with such work routine and [would] have complaints of confusion and malaise." *Id.* at 34.

On July 11, 2009, Dr. Paxton completed a psychiatric review technique and mental residual functional capacity assessment. (Doc. 12-8 at 47-60). Dr. Paxton believed Plaintiff had a medically determinable affective disorder. *Id.* at 49-50. According to Dr. Paxton, Plaintiff had mild restriction of activities of daily living; mild difficulty in maintaining social functioning; mild difficulty maintaining concentration, persistence, or pace; and no episodes of decompensation. *Id.* at 55. Specifically, Dr. Paxton indicated Plaintiff was "moderately limited" in her ability to understand, remember, and carry out detailed instructions, but "not significantly limited" in her ability to understand, remember, and carry out very short and simple instructions. *Id.* at 58. In addition, Dr. Paxton opined Plaintiff was "moderately limited" in her ability to interact appropriately with the general public. *Id.* at 59. Dr. Paxton believed Plaintiff was "not significantly limited" in other areas of understanding and memory, sustained concentration and persistence, sustained concentration and persistence, social interaction, and adaptation. *Id.* at 59-60. Consequently, Dr. Paxton concluded Plaintiff was able to perform simple repetitive tasks. *Id.* at 46. Dr. Brooks affirmed this assessment on March 11, 2010. (Doc. 12-9 at 42).

Plaintiff's treating physician, Dr. Glenn Lapp competed a medical assessment on December 17, 2009. (Doc. 12-8 at 72-77). Dr. Lapp noted he treated Plaintiff every other week, and she had been diagnosed with posttraumatic stress disorder and major depressive disorder, severe without psychotic features. *Id.* at 72. He noted Plaintiff's symptoms included "a depressed mood most of the time, difficulty concentrating, social isolation, withdrawal, low energy, anxiety, tearfulness, fleeting periods of suicidal ideation [and] a history of suicide attempts." *Id.* at 72-73. In addition, she had flashbacks, nightmares, "learned helplessness, poor sleep [and] poor appetite." *Id.* at 72. He believed Plaintiff's prognosis was "very guarded" and noted "her response to therapy has been equivocal with <u>some</u> slow improvement over time." *Id.* (emphasis in original). *Id.* According to Dr. Lapp, Plaintiff had a

"limited but satisfactory" ability to carry out very short and simple instructions. *Id.* at 74. He opined Plaintiff was "unable to meet competitive standards" in her ability to remember work-like procedures, understand and remember either very short and simple instructions or detailed instructions, maintain attention and regular attendance, work in coordination with others without being unduly distracted, make simple work-related decisions, perform at a consistent pace, accept instructions and respond appropriately to criticism from supervisors, respond appropriately to changes, deal with stress, and be aware of normal hazards. *Id.* at 74-75. He explained: "[Plaintiff] has difficulty with cognitive processing, recall, concentration, goal directed behavior, [and] self-motivation." *Id.* at 75. Dr. Lapp concluded Plaintiff was unable to complete a normal workday and workweek without interruptions from psychologically-based symptoms. *Id.* at 74.

Dr. Lapp completed a second assessment on October 5, 2010. (Doc. 13-6 at 3-8). He believed Plaintiff "confine[d] her life to her home" and was "slow to respond to therapeutic intervention." *Id.* at 3. Dr. Lapp noted Plaintiff had "symptoms of severe depression with isolation, withdrawal, low self esteem, low motivation, anhedonia, flat affect, tearfulness [and] suicidal ideation." *Id.* According to Dr. Lapp, "[Plaintiff's] symptoms of depression and posttraumatic stress disorder preclude her from working." *Id.* at 6. In addition, Dr. Lapp believed Plaintiff's anxiety "impair[ed] her capacity to interact with others," and depression "preclude[d] her ability to concentrate or carry out goal directed behavior." *Id.* Further, Plaintiff's depression was "so severe that her intellectual functioning [was] decreased" and she had "psychomotor retardation." *Id.* Dr. Lapp opined Plaintiff had moderate restriction in activities of daily living; extreme difficulties in maintaining social functioning; extreme difficulties in concentration, persistence, or pace; and one or two episodes of decompensation. *Id.* at 7. Dr. Lapp concluded Plaintiff was "not capable of holding a job at this time" because her "symptoms are so severe that she has difficulty sustaining herself." *Id.* at 8.

**B.     Hearing Testimony**

Plaintiff testified before the ALJ at a hearing on January 5, 2011. (Doc. 12-3 at 39). Plaintiff said she had a seventh-grade education and did not take the GED exam. *Id.* at 41. She reported she could read and write "[a] little bit" but was unable to comprehend a story in the newspaper. *Id.* In addition, Plaintiff said she could write, but her children were unable to read her writing. *Id.* at 42.

Plaintiff reported she worked cleaning a woman's home for an hour a day, seven day a week for "two or three months" in 2009. (Doc. 12-3 at 43-44). In addition, Plaintiff said she worked in 2002 for about three months doing inventory for her sister-in-law. *Id.* at 45. According to Plaintiff, she was no longer able to work because she could not "be around a lot of people." *Id.* at 46. She explained "[t]he noise, the talking I just, it's like something inside of me just like bursts." *Id.* at 45.

She stated she was receiving treatment at Stanislaus' County Mental Health with Dr. Lapp, her psychologist, and Dr. Tran, her psychiatrist. (Doc. 12-3 at 46). Plaintiff stated she saw Dr. Lapp every two weeks when she began treatment but, at the time of the hearing, she saw him about once a month. *Id.* at 47.

Plaintiff said that "most of the time" she was depressed and did not want to be around others, including her children. (Doc. 12-3 at 48). Plaintiff explained she stayed in her room, depressed, because she was not able to "come out an associate and stuff" without becoming irritated. *Id.* She did not like when her family visited because they would get on her nerves to the point that she would lock herself in the bedroom and take an anxiety pill. *Id.* Plaintiff said she did not go shopping "[b]ecause there are too many people in the markets" and she was unable to concentrate on what she wanted to purchase. *Id.* at 49.

## C.    The ALJ's Findings

Pursuant to the five-step process, the ALJ determined Plaintiff had not engaged in substantial gainful activity after her application date. (Doc. 12-3 at 21). Second, the ALJ found Plaintiff's severe impairments included: "major depressive disorder, history of hepatitis C, and substance abuse in purported current remission." *Id.* Next, the ALJ found Plaintiff did not have an impairment or a combination of impairments that met or medically equaled a listing. *Id.* at 21-22. The ALJ determined:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she is limited to occasional bending, stooping, squatting, kneeling, crawling, or climbing stairs; she is limited work that does not require her to climb ladders, ropes, or scaffolding; she is limited to work that does not require work at heights or around hazardous machinery; and she is limited to work involving simple instructions and restricted contact with public and co-workers.

*Id.* at 23. Considering this residual functional capacity ("RFC"), Plaintiff's age, education, and work experience, the ALJ determined there were "jobs that exist in significant numbers in the national

1  economy that the claimant can perform." *Id.* at 31.  Therefore the ALJ concluded Plaintiff was not

2  disabled as defined by the Social Security Act.  *Id.* at 32.

3  **DISCUSSION AND ANALYSIS**

4       Plaintiff contends the ALJ erred in assessing the opinion of Dr. Cushman.  (Doc. 16 at 10-21).

5  According to Plaintiff, "the ALJ failed to articulate a legally sufficient rational to reject [his] opinion."

6  *Id.* at 14.  On the other hand, Defendant argues "[t]he ALJ explained why he rejected portions of Dr.

7  Cushman's opinion," and "gave legitimate reasons for rejecting that evidence."  (Doc. 17 at 8).  Thus,

8  the sole issue pending before the Court is the ALJ's assessment of the opinion of Dr. Cushman, an

9  examining physician.

10  **A.   Evaluation of the Medical Evidence**

11       In the Ninth Circuit, courts distinguish the weight to be given to opinions of three categories of

12  physicians: (1) treating physicians; (2) examining physicians, who examine but do not treat a claimant;

13  and (3) non-examining physicians, who neither examine nor treat a claimant.  *Lester v. Chater*, 81 F.3d

14  821, 830 (9th Cir. 1996).  Generally, the opinion of a treating physician is afforded the greatest weight

15  in disability cases, but it is not binding on an ALJ in determining the existence of an impairment or on

16  the ultimate issue of a disability.  *Id.*; *see also* 20 C.F.R. § 416.927(d)(2); *Magallanes v. Bowen*, 881

17  F.2d 747, 751 (9th Cir. 1989).  Further, an examining physician's opinion entitled to more weight than

18  the opinion of a non-examining physician.  20 C.F.R. § 416.927(d)(2).  Thus, the Courts apply a

19  hierarchy to the weight given to opinions offered by physicians.

20       The opinion of a physician may be rejected whether or not the opinion is contradicted by

21  another physician.  *Magallanes*, 881 F.2d at 751.  When there is conflicting medical evidence, "it is the

22  ALJ's role to determine credibility and to resolve the conflict."  *Allen v. Heckler*, 749 F.2d 577, 579

23  (9th Cir. 1984).  An ALJ may reject the contradicted opinion of a physician with "specific and

24  legitimate" reasons, supported by substantial evidence in the record.  *Lester*, 81 F.3d at 830; *see also*

25  *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).

26       Here, the ALJ provided an extensive summary of the subjective complaints of Plaintiff at the

27  examination with Dr. Cushman, as well as his findings from the examination.   (Doc. 12-3 at 26-27).

28  In explaining the weight given to the opinion of Dr. Cushman, the ALJ stated, in relevant part:

7

I allocate only slight weight to Dr. Cushman's opinions of residual functional capacity because, despite his comment that the claimant attempted to appear more limited than she actually was, he then accepts her subjective allegations in estimating her capacity. He found she was not capable of performing any detailed or complex tasks in a vocational setting, could not perform some simple and repetitive tasks in a work setting, could have difficulties with regular attendance and consistent participation, and working a normal workday or work week, as she had little experience with such a work routine and will have complaints of confusion and malaise. Special or additional supervision is needed in the area of monitoring for substance abuse and she will most likely need assistance with reading, writing and arithmetic. She appears capable of following simple verbal instructions from supervisors, but not complex instructions. She will have great difficulties getting along with supervisors, coworkers, and the general public. She will have great difficulties dealing with the usual stressors encountered in a competitive work environment. He noted she presented herself so cognitively limited during the evaluation that she would not be able to manage her own funds, he also noted serious reservations about her emotional stability in managing her funds considering her substance abuse history and antisocial ways (Exhibit 4F). This opinion is given some weight. I agree with the portion of the opinion wherein the claimant can perform some simple and repetitive tasks in the workplace, and in her ability to work with the public and co-workers.  However, the remainder of the opinion is inconsistent with Dr. Cushman's own statements and the diagnosis that the claimant malingered and manipulated her cognitive test scores. Dr. Cushman stated her test results showed the claimant was putting more effort into appearing more impaired than she actually was. Additionally, the other limitations are based upon the claimant's reported subjective complaints. Finally, the other evidence in the record is inconsistent with portions of the opinion, the opinion was based upon the examination and observations of the claimant on that single occasion, and Dr. Cushman only reviewed about five pages of treatment records that were provided by the claimant that date.

(Doc. 12-3 at 27-28).  Plaintiff contends the ALJ erred "reject[ing] Dr. Cushman's opinion regarding [her] ability to maintain regular attendance, get along with others, and handle the stressors of the workplace."  (Doc. 16 at 16).  Reviewing the reasons set forth by the ALJ, Plaintiff argues, "the ALJ failed to provide a single legitimate reason for rejecting Dr. Cushman's examining opinion."  *Id.* at 19.

### 1.     Limitations based upon Plaintiff's subjective complaints

The Ninth Circuit has determined a physician's opinion may be rejected where it is predicated upon a claimant's subjective complaints that have been properly rejected by the ALJ.  *Ryan v. Astrue*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008).  The Court explained: an physician's opinion "premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded, once those complaints themselves have been properly discounted." *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1463-64 (9th

8

Cir. 1995)).  Here, the ALJ purports to discount Dr. Cushman's opinions because he "accepts her subjective complaints in estimating her capacity."  (Doc. 12-3 at 27).  In addition, the ALJ believed some of the limitations assessed by Dr. Cushman were "based upon [Plaintiff's] reported subjective complaints."  *Id.* at 28.

Significantly, however, the ALJ fails to identify what portions of Dr. Cushman's findings are based solely upon Plaintiff's subjective complaints.  Dr. Cushman administered several tests during the examination, including the Trials A and B, Bender Gestalt 2, Wechsler Adult Intelligence Scale-III, and Wechsler Memory Scale Revised.  (Doc. 12-8 at 32).  Dr. Cushman noted: "[Plaintiff] could listen to and accurately recall up to four digits forwards and inconsistently three backwards.  This suggests significant problems with attention, concentration, and/or effort."  *Id.* at 33.  He determined Plaintiff would "have difficulties at this time with regular attendance and consistent participation" not based upon her subjective complaints, but rather her "little experience with such work routine" *id.* at 34 (*see also id.* at 32) (observing Plaintiff had "very limited vocational experience").

Further, Dr. Cushman indicated his opinions were based upon "the above diagnoses," which included: major depressive disorder, recurrent, severe without psychotic features; physical and sexual abuse of child, by history (victim); physical and sexual abuse of adult, by history (victim); opioid-induced mood disorder, current; polysubstance dependence (heroin, amphetamine, cocaine, PCP), in partial remission; amphetamine-induced psychotic disorder with delusions, by history; malingering (exaggerating cognitive deficits); antisocial personality disorder; and borderline intellectual functioning.  *Id.* at 34.  Accordingly, because Dr. Cushman's opinions were not based solely upon Plaintiff's subjective complaints, this reason does not support the ALJ's rejection of his opinion.

2.     Inconsistencies within Dr. Cushman's assessment

The Ninth Circuit explained the opinion of a treating physician may be rejected where an ALJ finds incongruity between a doctor's assessment and his own medical records, and the ALJ explains why the opinion "did not mesh with [his] objective data or history."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *see also Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999) (explaining internal inconsistencies within a physician's report supports the decision to discount the opinion of a physician); *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005) (ALJ

9

1    permissibly rejected treating physician's opinion containing contradictory observations).

2        In this case, the ALJ opined Dr. Cushman's conclusions were "inconsistent with [his] own

3    statements and the diagnosis that the claimant malingered and manipulated her cognitive test scores."

4    (Doc. 12-3 at 27).  Plaintiff argues the diagnosis of malingering is not inconsistent with the opinion of

5    Dr. Cushman, given the additional diagnosis of an antisocial disorder.  (Doc. 16 at 16-17) (citing

6    *Morales v. Apfel*, 225 F.3d 310, 319 (3rd Cir. 2000).  As the Third Circuit recognized, "malingering

7    and manipulation are symptoms of the anti-social personality disorder."  *Morales*, 225 F.3d at 319

8    (citing *Diagnostic and Statistical Manual of Mental Disorders*, American Psychiatric Association, 702

9    (4th ed.) ("individuals with Antisocial Personality Disorder . .. may repeatedly lie, use an alias, con

10   others, or malinger")).  Further, this Court has determined an ALJ erred in his analysis "by using [the

11   claimant']s malingering to implicitly reject all aspects of [her] limitations, some of which stemmed

12   from an uncontroverted diagnosis of antisocial personality disorder."  *Carr v. Astrue*, Case No. 1:08-

13   cv-1042-BAK-DLB, 2009 WL 311240 at *9 (E.D. Cal. Sept. 23, 2009).

14       Because it appears malingering is consistent with Dr. Cushman's diagnosis of an antisocial

15   personality disorder, this reason does not support rejecting portions of his opinion.

16       3.    Inconsistency with other evidence in the record

17       The medical opinion of an examining physician may be rejected where it is "unsupported by the

18   record as a whole."  *Mendoza v. Astrue*, 371 Fed. Appx. 829, 831-32 (9th Cir. 2010) (citing *Batson v.*

19   *Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2003)).  The ALJ must identify the

20   conflicting evidence to set forth a specific, legitimate reason for discounting the opinion.  *See Cotton v.*

21   *Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986) (the ALJ must "set out a detailed and through summary of

22   the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings").

23       As Defendant acknowledges, the ALJ failed to discuss how Dr. Cushman's opinion was

24   inconsistent with in the record.  (Doc. 17 at 10).  Defendant, however, asserts "the ALJ had addressed

25   the record as a whole earlier in his decision and noted that it showed that Plaintiff's condition improved

26   with treatment."  *Id.* (citing Tr. 25, Doc. 12-3 at 26).  The summary of the treatment records from

27   Stanislaus County Behavioral Health, to which Defendant cites, fails to satisfy the ALJ's burden.

28   Though summarizing the treatment records, the ALJ does not identify any conflicts, and offered only

his conclusion that the record was "inconsistent with" the opinions of Dr. Cushman, without reference to any findings or clinical evidence.  Accordingly, the ALJ did not set forth a "detailed and thorough summary of the facts and conflicting clinical evidence," and the claimed inconsistencies do not support rejecting portions of Dr. Cushman's opinion.

### 4.    Opinion based upon single examination

Finally, the ALJ rejected Dr. Cushman's opinion because "the opinion was based upon the examination and observations of the claimant on that single occasion, and Dr. Cushman only reviewed about five pages of treatment records that were provided by the claimant that date."  (Doc. 12-3 at 28). Importantly, an ALJ must consider the opinions of examining physicians.  Lester, 81 F.3d at 830; 20 C.F.R. §§ 404.1527, 416.927.  Therefore, the fact that Dr. Cushman offered an opinion upon a single evaluation and limited medical records is not a legitimate reason for rejecting his opinion. *See Hall v. Astrue*, 2011 WL 3555716 at * 9 (E.D. Cal. Aug. 11, 2011) ("the fact that [the physician's] opinion is based on a one-time examination is not a valid reason for rejecting the opinion").

## B.    Remand is appropriate in this action

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the District Court.  *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).  Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation.  *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)).  Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996).  In addition, an award of benefits is directed when no useful purpose would be served by further administrative proceedings, or where the record has been fully developed.  *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988).

Applying the *Smolen* factors to this case, the ALJ failed to set forth legally sufficient reasons to properly reject portions of the opinion of Dr. Cushman related to Plaintiff's ability to handle the stress

11

of working, maintain a schedule, and get along with supervisors, or her need for extra supervision. The matter should be remanded for the ALJ to re-evaluate the medical opinions, because it is not clear from the record that the ALJ would be required to find Plaintiff disabled if the opinion was credited.

## CONCLUSION AND ORDER

For all these reasons, the ALJ erred in the evaluation of the medical evidence and in giving less weight to the opinion of Dr. Cushman.  Because the ALJ failed to apply the correct legal standards, the decision should not be upheld by the Court.  *See Sanchez*, 812 F.2d at 510.

Accordingly, **IT IS HEREBY ORDERED**:

1.     The matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and

2.     The Clerk of Court be **DIRECTED** to enter judgment in favor of Plaintiff Annette Alderete and against Defendant, Carolyn W. Colvin, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **August 7, 2013**                    **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE

12